**GOODBODY et al. v. FIRESTONE STEEL PRODUCTS CO.**

Circuit Court of Appeals, Sixth Circuit.
January 3, 1928.

No. 4940.

**1. Patents ⬤⇒312(1)—Affidavit of priority of invention filed in Patent Office held not presumed untrue in infringement suit, 14 years later, because of failure to prove truth.**

That an affidavit showing priority of invention, filed in the Patent Office to avoid anticipation by patents cited, was not proved to be true by evidence in an infringement suit 14 years afterward, raises no presumption that it was not true, and that the patent was anticipated.

**2. Patents ⬤⇒312(1)—Conditions which might invalidate a patent cannot rest on presumption.**

While patents issued without due consideration of the prior art, or because of misrepresentation, fraud, or mistake, are entitled to the minimum presumption of validity, none of such conditions may rest on presumption, instead of proof.

**3. Patents ⬤⇒328—1,031,236, for vehicle wheel rims, held valid and infringed.**

Bosworth patent, No. 1,031,236, for vehicle wheel rims, *held* not anticipated, valid, and infringed.

**4. Patents ⬤⇒36—Recognition of merit of device in highly competitive market is of substantial weight in considering whether it discloses patentable advance in the art.**

While commercial success does not establish either novelty or patentability, the recognition accorded an alleged invention in a highly competitive market is not without substantial weight, in considering the extent of the advance of the art resulting therefrom.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit in equity by the Firestone Steel Products Company against Thos. P. Goodbody, receiver of the Hydraulic Steel Company, and others. Decree for complainant, and defendants appeal. Affirmed.

John F. Oberlin, of Cleveland, Ohio (Baker, Hostetler & Sidlo, Fay, Oberlin & Fay, and Jos. C. Hostetler, all of Cleveland, Ohio, on the brief), for appellants.

A. L. Ely, of Akron, Ohio, and F. O. Richey, of Cleveland, Ohio (Ely & Barrow, of Akron, Ohio, on the brief), for appellee.

Before DENISON and MOORMAN, Circuit Judges, and RAYMOND, District Judge.

RAYMOND, District Judge. This appeal involves the validity and infringement of United States letters patent No. 1,031,236, issued to the Firestone Tire & Rubber Company, July 2, 1912, on application of P. B. Bosworth, for vehicle wheel rims. Applicant assigned to patentee prior to issuance of patent, and plaintiff appellee is now the owner thereof by assignment in 1918. The infringement charged is alleged to have been by defendant as receiver while operating the plants of the Hydraulic Steel Company and the Cleveland Welding & Manufacturing Company. The District Court held the patent valid and infringed, and the usual interlocutory decree for injunction and accounting was entered.

The claimed invention pertains essentially to a means to permit the quick detachment of pneumatic or other tires from vehicle wheel rims. The important element is a split locking ring specially formed to hold in place a removable tire flange. The objects of the invention are stated to be "the production of a construction in which the locking ring for holding the removable tire flange in operative position and the co-operating parts of the rim proper shall be such as to secure a maximum of strength and security with a minimum amount of metal * * * to hold the flange most securely in place, to reduce to the lowest limit the tendency of the locking ring to leave its groove in the rim, and to obtain the best bracing effect by the ring on the flange."

In addition to the usual defenses of invalidity by reason of anticipation and for lack of invention, a supplemental defense of estoppel is urged which arises from the proceedings in the Patent Office. The application was filed June 4, 1910, and was a division of an original application filed December 24, 1909. The first four claims of the patent as finally issued were rejected upon Bryant 772,209, Baker 913,253, Litchfield 943,029, and Evans 949,888. No appeal was taken from the final rejection, but instead an affidavit, which claimed February 14, 1907, as the date of invention, was filed under Patent Office rule 75, and thereby priority was sought over all citations except Bryant. Thereupon the patent was issued. Defendant asserts that the patentee thereby admitted the pertinence of the citations and acquiesced in the rejection of his claims as originally filed. It is argued that plaintiff, not having established priority over such references upon the trial, is not entitled to the presumption of validity, and that the claims secured thereby are ab initio invalid. No attempt was made by plaintiff at the trial to establish the truth of the affidavit, lapse of time and destruction of records providing the alleged reason for this failure.

[1, 2] To place upon a patentee the burden of establishing the truth of an affidavit after a lapse of over 14 years would in our judgment be unreasonable. To do so would be to raise a presumption of fraud, and to lose sight of that principle which recognizes as probable the loss of proof by lapse of time upon which statutes of limitation commonly rest. The authorities cited by defendant deal with cases of estoppel in which applicant's claims had been either amended or canceled as the result of rejection and a narrower claim substituted as a condition of the grant. For over 14 years prior to this suit plaintiff had been in the possession of a patent. An extensive industry in a highly competitive field has been based upon it. Heretofore its validity has not been questioned. It may be conceded that patents which issue without due consideration of the prior art are entitled to the minimum presumption of validity (see American, etc., v. Sample [C. C. A. 3] 130 F. 145, 149), and that patents issued because of misrepresentation, fraud, or mistake are in the same category; but it does not follow that any of these conditions may rest upon presumption instead of proof.

We agree with the trial court that the most that can be contended is that the presumption of validity flowing from the issue of the patent is of little practical aid, and that whether invention and patentable novelty exist must be determined by this court from the prior art here cited. Neither the truth nor the sufficiency of the affidavit is properly within the issues for our consideration. We therefore disregard it, and consider the prior art unaffected by the affidavit.

This principle was recognized in the case of W. S. Godwin Co. v. International Steel Tie Co. (C. C. A.) 2 F.(2d) 198, wherein it was said: "The conclusion of the examiner to grant a particular claim, like the conclusion of an equity trial court to enter a particular decree, will be approved, if it was right, although the reason given is not sound. See Campbell Co. v. Pomeroy Co. (D. C.) 300 F. 872, 873, Learned Hand, District Judge."

The conclusion that there is no estoppel is also supported by our holding in Permutit Co. v. Wadham, 13 F.(2d) 454, 457, that a disclaimer to avoid a reference does not estop the patentee from later contending that the reference was not pertinent. This holding has been approved in Perkins Glue Co. v. Holland Furniture Co. et al. (C. C. A.) 18 F.(2d) 387, 394.

[3] The issues of novelty and patentability present difficult questions. The important element of the claims is the locking ring, the primary function of which is to hold the removable flange in position on the rim base. There is no substantial difference in the underlying subject-matter covered by the several claims. Claim 1 is typical and reads:

"In a tire-retaining means, the combination of a tire rim having a depressed groove at one edge thereof bounded at its outer side by an upstanding rib, a tire-retaining flange adapted to rest at its inner portion upon the bottom wall of the rim, and a locking ring adapted to fit in said groove, underlie the tire flange, and overlie said rib, the contacting surfaces of the rim, flange, locking ring, and rib being in alignment or register, substantially as described."

An accurate description of the specific form of the locking ring is difficult. It is substantially shown by the following cut and is summarized in the opinion of the trial court as follows:

"Roughly described, it resembles in cross-section two right-angled triangles offset with relation to each other. The lower triangle is rounded rather than angular on its bottom surface so as to conform to the groove of the tire rim in which it is adapted to seat. Two recesses or notches are thus formed in the ring. The projecting shoulder of the outer * * * recess is adapted to overlie and to bear upon the upper or outer surface of the upstanding rib of the tire rim. The ledge or upper surface of the lower triangle is adapted to project under the removable tire flange and bear against it. The several surfaces of the upstanding rib, of the overlying shoulder, of the underlying ledge, and of the outer surface of the tire rim, are in alignment or register."

The record discloses that quick detachable rims are of two classes, one in which the removable flange is split, seating in a groove in the side of the rim base, and the other in which the side flange is continuous, being held

in position by a split locking ring, which is seated in the groove in the rim base. The former is in use on the lighter cars, on which tires carry comparatively low air pressures and are not subjected to excessive strains, while the latter is used on trucks and busses, where high air pressures are the rule, and the tires and rims are subjected to severe strain and stress. The rim here under consideration is of the latter type.

A review of the prior art shows that the idea of providing a locking ring for removable side flanges was not new. Many forms of similar locking rings were in use prior to Bosworth. Many attempts had been made to combine the desirable features in a locking ring. The features chiefly sought were strength to resist sudden and severe lateral strains tending to "shell" the ring out of position, correct contour to combine resistance to "shelling" with not too great resistance to the bending necessary for removal, and economy of production in large quantities. The prior art specially relied on consists of Baker 913,253, Litchfield 943,029, Evans 949,888, Bryant 772,209, Bryant 853,058, and of a locking ring which plaintiff's predecessor had marketed prior to the claimed date of invention. The record discloses that none of these met with any considerable degree of commercial success. They appear to have been impracticable. It was apparent that the problems arising from a tendency to "shell" or roll out of their gutters and the inability to withstand the shocks and stresses of heavy bus and truck service, had not been solved. In no instance prior to Bosworth had the distribution of weight and shock been so successfully accomplished. Very slight changes in contour of the rings necessarily affects vitally the success with which the desired ends are accomplished. In our view the trial court correctly summarized the advance of the Bosworth invention as follows:

"In my opinion, that Bosworth has superior merits and advantages is shown by the evidence. His ring combines the maximum strength with the minimum weight. It is self-seating and is not subject to mistake in application. When seated it resists displacement in every direction against all forces and strains to which a locking ring can be subjected. It can not be displaced radially except by shearing action, thereby giving the greatest strength for the minimum weight of metal. It is easily put on and taken off, and, when in position, has the appearance of being an integral part of the rim. It may be made more cheaply and easily than other known forms."

[4] It is our view that Bosworth made these improvements over prior inventions and thereby made substantial advance in the art. His invention met with prompt, extensive, and continued commercial success. With unimportant exceptions it had for a considerable number of years occupied exclusively the market for this type of rim, until defendant entered the field of competition. While commercial success does not establish either novelty or patentability, the recognition accorded an alleged invention in a highly competitive market is not without substantial weight in considering the extent of the advance of the art resulting therefrom. Our conclusion agrees with that of the trial court that Bosworth is not only not anticipated, but that his device is not devoid of patentable invention.

On the subject of infringement it appears that defendant, being a large producer of tire bases to which solid tires were vulcanized, and being confronted with a diminishing market caused by the trend of market demands from the solid to the pneumatic tires, in order to supply orders resulting from this change, produced and sold an exact copy of the Bosworth locking rim in January, 1926. Formal notice of infringement met with prompt cessation in February, 1926, of manufacture and sale. Defendant then concluded to produce and market a modification of the Bosworth ring. This modification consisted principally in making the overlying shoulder of the upper triangle somewhat different in form by means of a 15-degree angular deflection upwardly of the shoulder of the locking ring, thus creating a widening gap between the lower surface of that part of the locking ring and the upper surface of the upstanding tire rib. No such gap or divergence is provided for in Bosworth. The result of this and other slight changes is that the contacting surfaces of the rim flange, locking ring, and upstanding rib are not in precise alignment or register, and that the projecting portion does not, except in case of heavy stress or sudden shock, constitute an overhanging bracing shoulder. There are also unimportant changes in the direction of the curve at the inner corner of the upstanding tire rib.

The only substantial functional change urged by defendant is that by this change in the contour of the overlying shoulder this projecting portion does not constitute an overhanging bracing shoulder because it does not bear against that part of the rim at the outer side of the groove. The dimensions and weight of the rim, removable tire flange,

and locking ring, are practically the same as those of the Bosworth device. We think it is apparent that under stress the overlying shoulder will bear upon and brace against the upper surface of the upstanding rib. The one substantial difference seems to be that while in both structures the ring is braced at all times by some portion of the upper gutter wall, in Bosworth's construction the entire upper surface of the upstanding rib is at all times in contact with the lower surface of the projecting portion of the locking ring, and only the gutter edge of the upstanding rib provides the bracing effect in defendant's device except at times of stress and shock. No reason for the change appears except defendant's desire to avoid infringement. No substantial advantage is gained. It is designed to and does perform substantially the same function in substantially the same way to obtain the same result. We think it is clear that Bosworth's claims are infringed.

The interlocutory decree of the District Court is affirmed.